T.C. Memo. 2007-39

UNITED STATES TAX COURT

MARCIA S. GREEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10906-05.          Filed February 20, 2007.

<u>David S. Eisenmann</u>, for petitioner.

<u>Jeremy L. McPherson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $909,044 deficiency in petitioner's Federal income tax for 2002 and a $181,809 accuracy-related penalty under section 6662(a).[1]  After

_____

    [1]All section references are to the Internal Revenue Code in effect for 2002, and all Rule references are to the Tax Court
                                        (continued...)

concessions,[2] there are four issues for decision.  The first issue is whether a jury award from an employer-retaliation lawsuit is excludable from petitioner's income under section 104(a)(2) as damages received on account of personal physical injury or physical sickness.  We hold that it is not.  The second issue is whether petitioner must include in income the fee paid from the jury award to the attorney who represented her in the employer-retaliation lawsuit.  We hold that she must.  The third issue is whether petitioner is liable for the accuracy-related penalty under section 6662(a).  We hold that she is.  The fourth issue is whether the jury award is community property under California law.  We hold that it is, and therefore one-half of the jury award is not includable in petitioner's income.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference.  Petitioner resided in Pacifica, California, at the time she filed the petition.

Petitioner was a non-tenured lecturer in the Humanities Department of San Francisco State University (the University) in

---

[1](...continued)
Rules of Practice and Procedure, unless otherwise indicated.  All dollar amounts are rounded to the nearest dollar.

[2]Respondent conceded the accuracy-related penalty relating to the underpayment of tax attributable to the portions of the jury award petitioner included in income and paid her attorney.

1996. The Humanities Department had an opening for a tenure track position at that time. Petitioner applied but was not selected for the position. Petitioner filed grievances against the University with her union and with California's Department of Fair Employment and Housing alleging discrimination in the hiring process, but her filing the grievances did not change the hiring decision. The University then effectively terminated petitioner's employment, refusing to assign her any courses beginning the fall 1997 semester. Petitioner retained attorney Geoffrey Faust to represent her in a lawsuit against the University.

Lawsuit and Jury Award for Damages

Petitioner filed a complaint against the University. Petitioner alleged in the complaint that she had been denied the tenure track position as a result of discrimination in violation of the California Fair Employment and Housing Act (FEHA), Cal. Govt. Code sec. 12900-12996 (West 2005). She also alleged that the University retaliated against her for complaining about the hiring process by effectively terminating her position, again in violation of FEHA. Petitioner asserted in the complaint that she "suffered emotional distress and injury to her professional reputation" as a result of the University's actions. Nowhere in the complaint, however, did petitioner allege that she suffered personal physical injury or physical sickness, and nowhere in the

complaint did she allege that she was entitled to recover any amount from the University for any such personal physical injury or physical sickness.

The jury found, after a month-long trial, that the University had not discriminated against petitioner, but that the University had retaliated against her for complaining of discrimination. The jury found that petitioner suffered $1.5 million of economic damages and $65,000 of non-economic damages from the University's retaliation. "Economic damages," for California juries, means objectively verifiable monetary losses including loss of earnings, loss of employment, and loss of employment opportunities. See California Jury Instructions, Civil: Book of Approved Jury Instructions, 14.00 (9th ed. 2003). "Non-economic damages," for California juries, means subjective non-monetary losses including, among other things, pain, suffering, mental suffering, emotional distress, and injury to reputation. Id. The jury's verdict did not contain any reference to personal physical injury or physical sickness.

The State of California appealed the decision but lost. Nowhere in the opinion did the appellate court mention any claim or damages awarded for personal physical injury or physical sickness.

Attorney's Fees and Payment

The trial court granted petitioner's attorney's motions for attorney's fees under FEHA's fee-shifting statute. The State of California ultimately paid petitioner $2,349,039 (the jury award) in 2002, which included the economic and non-economic damages, statutory attorney's fees, and interest. The attorney's fees under FEHA's fee-shifting statute plus interest thereon totaled $537,841. Petitioner agreed, however, to pay Mr. Faust a fee of 40 percent of the jury award, $928,576. The State of California also issued petitioner Form 1099-MISC, Miscellaneous Income, to report the $2,355,039 jury award.[3]

Petitioner and her husband met with attorney Robert Wood to discuss the tax implications of the jury award. Mr. Wood is a nationally renowned expert on the taxation of legal awards. Before the meeting, Mr. Wood reviewed several documents related to the trial and the Form 1099-MISC the State issued to petitioner. The record is not clear what tax advice, if any, Mr. Wood rendered.

The Income Tax Return for 2002 and the Deficiency Notice

Petitioner and her husband timely filed tax returns for 2002 as married persons filing separately. Petitioner and her husband

---

[3]The amount of the check is $6,000 less than the amount on the Form 1099-MISC, Miscellaneous Income. Respondent concedes that petitioner did not actually receive, and is therefore not taxable on, this $6,000.

have been married since 1979 and have been living together in California at all times relevant to this case.

Petitioner reported $437,368 of gross wages for 2002. Petitioner did not attach a statement to the return describing the jury award or any authority for excluding from income any portion of the jury award. She attached only Form W-2, Wage and Tax Statement, issued by the State reporting $11,508 of wages paid to petitioner in 2002. There was no way to determine from the return or from any attachment to the return the source of the other $425,860 of wage income petitioner reported. Petitioner's husband did not include any portion of the jury award in his income.

Respondent determined in a deficiency notice that petitioner should have included the jury award in income[4] and that petitioner is liable for an accuracy-related penalty for substantial understatement of income tax for 2002. Petitioner timely filed a petition.

                              OPINION

We are asked to decide whether any portion of the jury award is excludable from gross income and whether petitioner is liable for an accuracy-related penalty. We are also asked to decide whether the jury award is community property under California law. We begin with the burden of proof.

_____

[4]Respondent has since conceded that petitioner did include $425,860 of the jury award in income.

## I.   Burden of Proof

In general, the Commissioner's determinations in the deficiency notice are presumed correct, and the taxpayer bears the burden of proving that the Commissioner's determinations are in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Petitioner did not assert that the burden shifted to respondent under section 7491(a) and did not establish that she fully complied with the requirements of section 7491(a)(2).  We therefore find that the burden of proof remains with petitioner, except as otherwise conceded by respondent.[5]

## II.  Exclusion Under Section 104(a)(2)

We now consider whether petitioner may exclude the jury award from gross income under section 104(a)(2).[6]  Gross income generally includes all income from whatever source derived.  Sec. 61(a).  The definition of gross income is broad in scope. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955). Exclusions from gross income, however, are narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995).

---

[5]Respondent concedes he has the burden of proof with respect to the community property issue because he raised the issue for the first time after petitioner filed the petition.

[6]We apply sec. 104(a)(2) as amended in 1996 by the Small Business Job Protection Act of 1996 (SBJPA), Pub. L. 104-188, sec. 1605(a), 110 Stat. 1838, effective generally for amounts received after Aug. 20, 1996.  That amendment, in relevant part, added the modifier "physical" after "personal" and before "injuries," to clarify that amounts received on account of personal injuries must be received for physical injuries and not solely for emotional distress.  Id.

A legal award may be excluded from income if two conditions are met.  Id. at 337.  A legal award may be excluded if the underlying cause of action is based upon tort or tort-type rights, and if the proceeds were for damages received on account of personal physical injury or physical sickness.[7]  Id. Emotional distress is not a personal physical injury or physical sickness.  Sec. 104(a)(2) (flush language).

The parties agree that petitioner's underlying cause of action is based upon tort or tort-type rights.  Accordingly, the first condition is met.  The parties dispute, however, whether any portion of the economic or non-economic damages from the jury award was for damages received on account of personal physical injury or physical sickness.

Petitioner did not allege in the complaint against the University that she suffered personal physical injury or physical sickness as a result of its discrimination or retaliation, or that she was entitled to recover any amount from the University for any such personal physical injury or physical sickness.  In addition, the jury's verdict did not contain any reference to personal physical injury or physical sickness.  The jury awarded petitioner $1.5 million of economic damages to compensate her for the loss of earnings, loss of employment, and loss of employment

---

[7]The Supreme Court in Commissioner v. Schleier, 515 U.S. 323 (1995), analyzed sec. 104(a)(2) before its amendment by the SBJPA sec. 1605(a), when the restrictive modifier "physical" was added to limit the scope of "personal injuries".

opportunities caused by her former employer's retaliation.  The jury also awarded petitioner $65,000 of non-economic damages to compensate her for the emotional distress and the injury to her reputation caused by her former employer's retaliation.  Neither the economic nor the non-economic damages portion of the award compensated petitioner for personal physical injury or physical sickness.  Moreover, petitioner did not offer any documentation of medical expenses incurred for the treatment of her emotional distress.  Finally, the California appellate court did not mention any claim or damages awarded for personal physical injury or physical sickness.

We conclude that no portion of the jury award was for damages received on account of personal physical injury or physical sickness.  Petitioner is therefore not entitled to exclude any portion of the jury award from income for 2002 under section 104(a)(2).

III. Exclusion of Attorney's Fees

We now consider whether petitioner must include in income the amount of the jury award paid to Mr. Faust as an attorney's fee.  A litigant generally may not exclude the portion of a recovery paid to his or her attorney where, as here, the litigant's recovery constitutes income.  Commissioner v. Banks, 543 U.S. 426, 436-437 (2005).  This is true whether the attorney's fee was paid on a contingent fee basis or under a fee-

shifting statute.  <u>Sinyard v. Commissioner</u>, 268 F.3d 756 (9th Cir. 2001), affg. T.C. Memo. 1998-364; <u>Vincent v. Commissioner</u>, T.C. Memo. 2005-95.

Petitioner agreed to pay Mr. Faust 40 percent of the jury award, which percentage amounted to $928,576.  Petitioner stipulated that $537,841 of that amount represented the funds received under FEHA's fee-shifting statute.  Subtracting $537,841 from $928,576 leaves a $390,735 remainder.  Petitioner argues that she is entitled to exclude from income the entire amount paid to Mr. Faust.  We disagree.

The $537,841 portion paid pursuant to FEHA's fee-shifting statute is not excludable under <u>Sinyard v. Commissioner</u>, <u>supra</u>, and <u>Vincent v. Commissioner</u>, <u>supra</u>.  Petitioner failed to distinguish <u>Sinyard</u> or <u>Vincent</u>, both of which we find controlling.

We next consider the $390,735 additional amount paid to Mr. Faust.  Petitioner admits that she did not enter into a written fee agreement with her attorney at the start of the representation.  Petitioner also admits that, after the State of California paid her the jury award, she orally agreed to pay Mr. Faust 40 percent of the jury award.  Petitioner argues that she did not pay her attorney a contingent fee because the agreement between her and Mr. Faust was reached after she received the jury award.  A contingent fee is present, however, if an attorney

agrees to represent a client for compensation determined as a percentage of the amount recovered. Black's Law Dictionary 614 (6th ed. 1990). We find that the $390,735 additional amount was a contingent fee.

We conclude that petitioner is not entitled to exclude any of the attorney's fee from income whether paid under FEHA's fee-shifting statute or on a contingent fee basis.

IV. Accuracy-Related Penalty

We next consider whether petitioner is liable for the accuracy-related penalty under section 6662(a). Respondent argues that the accuracy-related penalty should apply to the $393,862 underpayment of income tax attributable to $994,602 of the jury award that petitioner incorrectly excluded from income. Respondent has the burden of production under section 7491(c) and must come forward with sufficient evidence that it is appropriate to impose the accuracy-related penalty. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

A taxpayer is liable for an accuracy-related penalty for any portion of an underpayment attributable to, among other things, a substantial understatement of income tax. Sec. 6662(a) and (b). There is a substantial understatement of income tax under section 6662(b)(2) if the amount of the understatement exceeds the greater of either 10 percent of the tax required to be shown on

the return, or $5,000. Sec. 6662(a), (b)(1) and (2), (d)(1)(A); sec. 1.6662-4(a), Income Tax Regs.

Respondent has met his burden of production with respect to petitioner's substantial understatement of income tax. The record indicates that petitioner reported income tax of $152,689. Petitioner's underpayment for which respondent seeks to apply the accuracy-related penalty is $393,862. The tax required to be shown on the return, for purposes of determining if there was a substantial understatement of income tax here, is the sum of these two amounts, $546,551. Ten percent of the tax required to be shown on the return is $54,655. Petitioner's understatement is greater than $54,655. Accordingly, petitioner's underpayment of income tax is a substantial understatement.

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if the taxpayer proves that there was reasonable cause for his or her position and that he or she acted in good faith with respect to such portion. Sec. 6664(c)(1); Higbee v. Commissioner, supra at 446; sec. 1.6664-4(a), Income Tax Regs. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances, including the taxpayer's reasonable reliance on a professional tax adviser. Sec. 1.6664-4(b)(1), Income Tax Regs.

A taxpayer reasonably relied on a professional tax adviser if the adviser was a competent professional who had sufficient expertise to justify the taxpayer's reliance on him or her, the taxpayer provided necessary and accurate information to the adviser, and the taxpayer relied in good faith on the adviser's judgment. See Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002). A taxpayer generally must prove each of these elements to show his or her reliance on a professional tax adviser was reasonable. Bowen v. Commissioner, T.C. Memo. 2001-47.

Petitioner argues that she reasonably relied on the advice of a professional tax adviser, Mr. Wood. We disagree. Petitioner proved that Mr. Wood is a competent professional who had sufficient expertise to justify her reliance on him. Petitioner did not show, however, that she provided all the necessary and accurate information to Mr. Wood for him to consider her situation and render tax advice. Moreover, petitioner did not show that she relied in good faith on Mr. Wood's tax advice because she did not establish what tax advice, if any, Mr. Wood rendered. We therefore do not find that petitioner reasonably relied on a professional tax adviser.

After considering all the facts and circumstances, we find that petitioner has failed to establish that she had reasonable cause and acted in good faith with respect to the underpayment of

income tax attributable to the portion of the jury award she incorrectly excluded from income. Accordingly, we conclude that the accuracy-related penalty applies to that portion.

V.   Whether The Jury Award Is Community Property

We finally consider whether the jury award is community property under California law, an issue that respondent raised for the first time after petitioner filed the petition. Married persons residing in California generally have a one-half interest in all property acquired during their marriage. Cal. Fam. Code sec. 760 (West 2004). Spouses residing in California filing separate returns generally must each report on the returns one-half of all income the married couple earned during the year. United States v. Mitchell, 403 U.S. 190, 196-197 (1971).

A legal award is community property if it is in satisfaction of a personal injury claim and if the cause of action arose during the marriage. Cal. Fam. Code sec. 780 (West 2006). A legal award is separate property only if it is in satisfaction of a personal injury claim and if the cause of action arose after the spouses were separated or divorced or while they were living apart. Cal. Fam. Code sec. 781 (West 2006). A personal injury claim arises from any tortious injury to a protected personal interest. In re Marriage of Klug, 130 Cal. App. 4th 1389, 1397 n.3 (Ct. App. 2005) (finding legal malpractice a personal injury claim).

Spouses may change community property into separate property of either spouse. Cal. Fam. Code sec. 850 (West 2004). The change must be documented in a writing signed by the spouse whose interest in the property is adversely affected. Cal. Fam. Code sec. 852(a) (West 2006).

Petitioner's retaliation claim is a personal injury claim within the meaning of California community property law. The claim arose from the University's tortious injury to petitioner's protected interests in her emotional well-being and her professional reputation. The record also establishes that petitioner and her husband were married and living together when her cause of action against the University arose, were residents of California, and filed separate returns for 2002. Finally, petitioner and her husband did not change the award from community property to her separate property because, as petitioner and her husband testified, there is no written agreement signed by petitioner's husband signifying the change. We find that respondent proved the jury award is community property. Petitioner, having filed a separate return from her husband for 2002, has to include only one-half of the jury award

in income.[8]  Petitioner's deficiency should be reduced

accordingly, and the accuracy-related penalty adjusted as well.

   To reflect the foregoing and respondent's concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[8]We note that sec. 66 does not change this result because the requirements of neither subsec. (a) nor (b) are met.  Specifically, petitioner and her husband were not living apart, and petitioner's husband knew of the jury award before petitioner filed the return for 2002.